UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON STONE,

    Plaintiff,

    v.       CAUSE NO. 3:20-CV-428-JD-MGG

ARAMARK INC, et al.,

    Defendants.

OPINION AND ORDER

Brandon Stone, a prisoner without a lawyer, filed a complaint against five defendants. ECF 1. He has also filed a motion for a preliminary injunction. ECF 24. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his complaint, Stone states that he has been housed at Westville Correctional Facility since August 2019. ECF 1 at 6. When he arrived at Westville, he asked to be placed on a Kosher diet because of his Jewish faith. *Id*. He asserts, however, that from August 2019, to October 2019, he was removed from the list to receive a Kosher diet four times. *Id*. at 7. Stone claims that Aramark Supervisor Jason English took him off of

the special diet list because he did not believe Stone should be included on that list. *Id*. Stone then filed a grievance about the situation. *Id*. On October 8, 2019, a prison officer spoke with English and Stone was placed back on the special diet list. *Id*. at 8. Several weeks later, on October 29, 2019, Stone received a response to his formal grievance: "Per Mr. English this was an accidental omission when transferring names from the central office master list to the WCU list. From now on, the master list will be used for all special diets." *Id*. However, Stone claims that his removal from the master list was not accidental as English was the only person who could remove him from the list. *Id*. at 9. He further asserts that each non-Kosher meal he was served was an assault on his religion, which caused him severe mental, emotional, and spiritual distress. *Id*. Thus, Stone claims that his First Amendment rights were violated because English removed him from the master list of inmates who have special diets. *Id*. at 31.

Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). However, prison officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Furthermore, the Equal Protection Clause and the Establishment Clause prohibit a defendant from treating members of some religious faiths more favorably than others without a secular reason. *See Cruz v. Beto,* 405 U.S. 319, 322-23 (1972); *Nelson v. Miller,* 570 F.3d 868, 880-82 (7th Cir. 2009). "The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more

2

traditional denominations." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). While Stone alleges that being removed from the special diet list was not accidental, his allegations are speculative, and he has not asserted any facts to support his conclusion. Therefore, he may not proceed against English on this claim.

Stone next asserts that from August 2019 to April 2020, when he received Kosher meals, they often contained spoiled food and were incomplete because they did not include enough food. ECF 1 at 10-16. Specifically, he claims that, from December 2019 to March 2020, there were 17 instances where he received spoiled or rotten food. *Id*. at 13-15. For example, a dinner tray served on December 23, 2019, had spoiled beans, and was incomplete because it contained only an apple, celery, and four pieces of bread. *Id*. at 11. He states that the trays also included spoiled coleslaw and brown salad. *Id*. at 14-15. As a result of being served spoiled or rotten food, Stone states he submitted four healthcare requests because he suffered from stomach pain, vomiting, and diarrhea. *Id*. at 13. He asserts each bout of illness was accompanied by excruciating pain that lasted a minimum of seven days and a nurse told him he had food poisoning. *Id*. Therefore, on the basis of these events, Stone alleges that English and Aramark, Inc, IDOC's food service provider, violated his Eighth Amendment rights by repeatedly serving him spoiled or rotten food.

In an Eighth Amendment conditions of confinement claim, the court conducts both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's

3

necessities." *Id.* Inmates are entitled to be provided with adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). But "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and inmates cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012) ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment.").

To the extent Stone asserts English violated his Eighth Amendment rights because he is the Aramark supervisor and oversees what is being served, he has not shown that English was personally involved in preparing his meals. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). And there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Id*. at 594. Therefore, Stone may not proceed against English on his Eighth Amendment claim.

Furthermore, Stone has also sued Aramark alleging it violated his Eighth Amendment rights by serving him spoiled or rotten food. ECF 1 at 30, 35. To pursue a claim under Section 1983 against a corporate entity, a plaintiff must show that his injury was the result of that corporate entity's official policy, practice, or custom. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). However, Stone has not alleged that Aramark has a policy or practice of serving Jewish inmates spoiled or

4

rotten food. Instead, his facts suggest that Aramark's staff may have merely been sloppy or careless in preparing and serving inmate meals. Thus, he may not proceed on this claim against Aramark.

Stone next asserts that between December 2019 and April 2020, there were unreasonable delays in receiving his meals because he is Jewish and, at times, he was served non-Kosher meal sacks because Kosher meals were not available. ECF 1 at 16. He claims there were at least 10 instances where he and other Jewish inmates were treated differently than non-Jewish inmates. *Id*.at 16-23. For example, Stone states that, on December 25, 2019, he did not get his meal tray until 9:00 p.m. whereas the other non-Jewish inmates received their meal trays at 4:00 p.m. *Id*. at 17. He alleges that, because English and Aramark did not feel like making Kosher meals that day, he was given an emergency meal sack. *Id*. Stone cites to another instance, on March 4, 2020, where he received his Kosher dinner tray at 5:15 p.m., but the tray was set to expire at 5:11 p.m., which meant the food was nearly spoiled. *Id*. at 18. He also explains that, on April 6, 2020, he did not eat for 17 hours because the Kosher dinner tray he received had expired and Aramark would not provide emergency Kosher meal sacks. *Id*. at 20. Instead, the next day when he received his breakfast tray, he was given an emergency meal sack that he should have received the previous night. *Id*. Thus, Stone asserts that English and Aramark discriminated against him on the basis of his Jewish faith because he received his meal trays hours later than other non-Jewish inmates.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d

5

705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . .." *Id*. at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Thus, Stone must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* Because Stone has not alleged facts that show English and Aramark intentionally discriminated against him by serving Kosher meals later than non-Kosher meals or by serving meals snacks when necessary, he may not proceed on this claim.

Next, Stone asserts that John Harvill, the prison's grievance specialist, denied or returned his grievances even though they were supported by ample evidence. ECF 1 at 24-25. However, he has no constitutional right to access the prison's grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure). Therefore, Stone cannot proceed on his claim against Harvill.

Stone further asserts that Warden Galipeau and Deputy Warden Gann knew about the constitutional violations but did nothing to stop them. ECF 1 at 32. A § 1983 suit requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). As stated, there

6

is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks*, 555 F.3d at 594. Because Warden Galipeau and Deputy Warden Gann were not personally involved in the alleged violations, they cannot be held liable simply because they oversee the operation of the prison or supervise prison staff. Therefore, Stone cannot proceed against them.

As a final matter, Stone has filed a motion for a preliminary injunction. ECF 24. However, because his complaint does not state a claim, the motion will be denied.

While Stone's complaint does not state a claim, the court will give him an opportunity to replead, if after reviewing this order, he believes he can state a claim. *Luevano v. WalMart Stores, Inc.*, 722 F.3d 1014, 1022-23, 1025 (7th Cir. 2013); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). In the amended complaint, Stone should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing as much detail as possible.

For these reasons, the court:

(1) DENIES Brandon Stone's motion for a preliminary injunction (ECF 24);

(2) DIRECTS the clerk to place this cause number on a blank Prisoner Complaint Pro Se 14 (INND Rev. 2/20) and send it to Brandon Stone;

(3) GRANTS Brandon Stone until **June 18, 2021,** to file an amended complaint on that form; and

(4) CAUTIONS Brandon Stone that if he does not respond by that deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim.

SO ORDERED on May 17, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT